(Surrogate's Court, Cattaraugus County. July, 1909.)

1. BANKRUPTCY (§ 433½*)—DISCHARGE OF BANKRUPT—CANCELING JUDGMENT OF RECORD—NECESSITY.

Intestate before his death had been discharged in bankruptcy. Neither he nor his administrator had complied with Code Civ. Proc. § 1268 (Consol. Laws, c. 12, § 150), whereby the fact that a judgment, provable in bankruptcy proceedings, had been released by the discharge, might be recorded. *Held* not to entitle the judgment creditor to share in the distribution of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 433½.*]

2. BANKRUPTCY. (§ 436*)—DISCHARGE OF DEBTOR—CLAIMS AGAINST ESTATE.

Where decedent before his death had been discharged in bankruptcy, but judgment creditors filed proofs of their claims against his estate, the burden was on them to show that they were not released by the discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 840; Dec. Dig. § 436.*]

3. EXECUTORS AND ADMINISTRATORS (§ 250*) — SURROGATE'S COURT — CLAIMS AGAINST ESTATE—DISCHARGE IN BANKRUPTCY.

Though the Surrogate's Court is one of limited jurisdiction, it has the right to determine the validity of controverted claims against the estate of the decedent, alleged by the administrator to have been released by his discharge in bankruptcy.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 893–895; Dec. Dig. § 250.*]

In the matter of the estate of William P. Peterson. Proceedings on judicial settlement of administrator's account. Decree rendered.

See, also, 62 Misc. Rep. 161, 116 N. Y. Supp. 286.

Creighton S. Andrews, for administrator.

Henry Donnelly and Fred L. Eaton, for judgment creditors.

DAVIE, S. Decedent died, intestate, March 19, 1908, at the city of Olean, N. Y., and letters of administration upon his estate were issued May 14, 1908, to George G. Peterson, a brother, who now files his petition and account as such administrator for judicial settlement. No controversy exists upon this accounting, except as to the right of certain judgment creditors of decedent to participate in the distribution of the funds of the estate.

Prior to the death of decedent various judgments were procured and duly docketed against him, sufficient.in amount in the aggregate to substantially absorb the entire residue of the funds left for distribution. None of these judgments has been paid; and such judgment creditors appear in this proceeding, file proof of their respective claims, and ask that the same be allowed and paid from the balance left for distribution. To each of these claims the administrator files an answer in writing, duly verified, denying the validity and legality of the claims, and alleging, in substance, that after the docketing of these judgments decedent filed a voluntary petition in bankruptcy, and that such proceedings were had upon said petition that, on the 18th

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

day of December, 1900, a decree was duly made by the District Court of the United States, discharging the decedent from all debts and claims existing against him on the 16th day of October, 1900 (on which day the petition for adjudication was filed), except such debts, if any, as were by law exempt from the operations of a discharge in bankruptcy. It was stipulated that each of the demands upon which the various judgments were obtained was properly provable in bankruptcy proceedings. It was also conceded that neither the decedent nor his personal representative had complied with the provisions of section 1268 of the Code of Civil Procedure (Debtor and Creditor Law . [Consol. Laws, c. 12] § 150); and it is contended on the part of the judgment creditors that, notwithstanding the discharge in bankruptcy, they are entitled to share in the distribution, in consequence of the failure of the decedent or some one on his behalf to resort to the procedure prescribed by the section referred to.

This necessitates an examination of the import and legal effect of that provision. The section provides:

"At any time after one year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, * * * for an order, directing the judgment to be canceled and discharged of record. If it appears upon the hearing that he has been discharged from the payment of that judgment, or the debt upon which such judgment was recovered, an order must be made directing said judgment to be canceled and discharged of record; and thereupon the clerk of said court shall cancel and discharge the same by marking on the docket thereof that the same is canceled and discharged by order of the court, giving the date of the entry of the order of discharge."

The portions of the section not above quoted relate to the preservation of liens upon real estate, and to the method of procedure under such section, and are of no consequence in this controversy. If the position of the judgment creditors be correct, then the decree of the United States District Court was entirely inoperative, so far as these judgments were concerned, until supplemented by an order of a court of this state, made pursuant to the provisions of the section quoted. Such contention cannot be maintained, having in mind the general and exclusive jurisdiction of the United States courts in bankruptcy proceedings. In this case the final decree in bankruptcy provides:

"Whereas, William P. Peterson, of Olean, in the county of Cattaraugus, and state of New York, has been duly adjudged under the act of Congress entitled 'An act to establish a uniform system of bankruptcy throughout the United States' approved July 1, 1898, and appears to have conformed to all the requirements of the law in that behalf: It is therefore ordered by the court that William P. Peterson be forever discharged from all debts and claims which by said act are made provable against his estate and which existed on the 16th day of October, 1900, on which day the petition for adjudication was filed, excepting such debts, if any, as are by law excepted from the operation of a discharge in bankruptcy."

The United States courts having exclusive jurisdiction of such proceeding and having made a definite and final decree therein, it would be unreasonable to contend that such decree was ineffective and inoperative until supplemented by the decree of the state court, or that the Legislature of the state of New York had any authority to limit,

modify, or extend the provisions of the judgment of the United States
court. When the decree of the United States court provided that the
decedent was discharged from all debts and demands existing against
him on the 16th day of October, 1900, and which were properly prova-
ble in bankruptcy, it did not mean that he should be so discharged if
the Legislature of the state of New York concurred and adopted the
necessary legislation to carry such decree into effect. The section of
the Code quoted, however, is not meaningless, nor adopted without
practical necessity. While the judgments referred to were actually dis-
charged by the decree in bankruptcy, yet they still remained, appar-
ently in full force and effect, upon the records. This section, accord-
ingly, provides a method whereby the public records might be made
to conform to and set forth the actual facts; that is, whereby a pub-
lic record might be made of the fact that such judgment had been dis-
charged by proceedings in bankruptcy. This conclusion is sustained
by Graber v. Gault, 103 App. Div. 511, 93 N. Y. Supp. 76; Pickert
v. Eaton, 81 App. Div. 423, 81 N. Y. Supp. 50. In the case last cited,
Spring, J., considering the section referred to, says:

"Section 1268 of the Code of Civil Procedure was adopted for the purpose of
enabling a judgment debtor, who has been adjudged a bankrupt, to secure the
cancellation on the docket of any judgment appearing on record against him.
The effect of the entry of the order was not to discharge the judgment, for
that had already been accomplished by the final order in the bankruptcy pro-
ceedings."

The next and remaining question calling for consideration in this
connection relates to the order or burden of proof in establishing the
fact of the discharge of the judgments in question by the proceedings
in bankruptcy. The administrator makes his case by proving the final
decree in bankruptcy, together with the stipulation to the effect that
these judgments and the causes of action upon which they were ob-
tained were properly provable in bankruptcy, without attempting to
show affirmatively that these judgment creditors were actually made
parties to the bankruptcy proceedings, upon the theory that the terms
of the final decree in bankruptcy were general, reciting the regularity of
the proceedings and asserting that all debts and demands against the
decedent were thereby discharged, except such as were not properly
provable in bankruptcy, and that, if any reason existed exempting these
particular demands from the general operation of the decree, the bur-
den was upon the judgment creditors to affirmatively establish such
reason.

While the terms of the decree in bankruptcy are general, assuming
to discharge all provable claims and demands against the decedent, yet
such decree must be read and construed with reference to the provi-
sions of the bankruptcy act under which it is made. Section 17 of
the national bankruptcy act, approved July 1, 1898 (Act July 1, 1898,
c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), provides:

"A discharge in bankruptcy shall release a bankrupt from all his prov-
able debts, except (1) such as are due as a tax levied by the United States, the
state, county, district or municipality in which he resides; (2) are judgments
in actions for fraud, or obtaining property by false pretense or false represen-
tations, or for wilful or malicious injuries to the person or property of an-
other; (3) have not been duly scheduled in time for proof and allowance, with

the name of the creditor if known to the bankrupt unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation or defalcation, while acting as an officer or in any fiduciary capacity."

The question, then, is: Was the burden of proof upon the administrators of showing affirmatively that the judgments in question did not come within the operation of either of the four exceptions, or did the duty of so doing rest upon the judgment creditors? It has been enunciated as a fundamental proposition that:

"When a cause of action or matter of defense under a statute is pleaded, which statute contains a proviso or exception in the same substantive clause on which the cause of action or defense is founded, although the declaration or plea must deny that the cause of action or defense is within the exception or proviso, yet it is not necessary for the party to prove the negative, but it rests with the other party to prove the affirmative."

This rule was recognized and applied in the well-considered case of Sherwood v. Mitchell, 4 Denio, 435, where the court, in considering the effect of a discharge in bankruptcy, says:

"The discharge is presumptive evidence of all the facts asserted in it, and is conclusive until overthrown by evidence of some fact which by the act avoids it. This discharge, it is true, is general in its terms, and prima facie is a discharge of the bankrupt from all his debts; but the creditor may, notwithstanding show that his debt is of the excepted class. The onus, however, is upon him; and, if he fails to make proof, the debt will be taken to be one of an ordinary character."

This decision was made under the former bankruptcy act, and not under the act of 1898, yet there is no sufficient distinction in the phraseology of the two acts as to affect the question under consideration. This principle was also recognized in Bump, Bankruptcy (11th Ed.) 725; Collier, Bankruptcy (3d Ed.) 202; Sedgwick, Stat. Const. 50; McCabe v. Cooney, 2 Sandf. Ch. 314; Harrison v. Lourie, 49 How. Pr. 124; Stevens v. King, 16 App. Div. 377, 44 N. Y. Supp. 893; Chapman v. Forsyth, 2 How. 202, 11 L. Ed. 236.

If these decisions and authorities are to be followed, the conclusion is irresistible that the onus was upon the judgment creditors of showing affirmatively, by way of defense, that for some reason their claims were excepted from the general provisions of the decree of discharge in bankruptcy. There does not seem to be anything in the prevailing opinion in Columbia Bank v. Birkett, 174 N. Y. 112, 66 N. E. 652, 102 Am. St. Rep. 478, inconsistent with this conclusion. It will be accordingly held in this proceeding that the administrator had made a sufficient prima facie case, upon establishing the decree in bankruptcy in connection with the admission that the judgments and claims upon which they were based were properly provable in bankruptcy.

It is also contended on the part of the judgment creditors that the Surrogate's Court has no jurisdiction upon this accounting to in any manner inquire into the status of these judgments; that nothing remains to be done but to direct the payment of the claims out of the balance left for distribution. While it is true that the Surrogate's Court is one of limited jurisdiction, having no right to determine the validity of controverted claims against an estate, except by consent of parties executed and filed pursuant to the statute, yet the issue here

involved is not one of the original validity of the demands upon which such judgments were obtained. No effort is made to attack the regularity of either of them. The proceedings of the courts in which they were obtained are not under review, nor is any question raised or sought to be injected regarding the jurisdiction of the United States court to make just such a decree as has been made. All we are asked upon this accounting to do is to apply the final adjudication of one court, concededly having jurisdiction, to the judgment of another court. To illustrate: Assume that, after the rendition of each of these judgments, actions had been brought upon them, respectively, in equity, to set them aside, and such actions had been prosecuted to final judgment, determining the invalidity of such judgments; would or could it be contended that the Surrogate's Court, upon final distribution of the funds of the estate, had no right or jurisdiction to observe the determination of such court of equity and apply the same in making distribution? The situation is simply this: Valid judgments were originally obtained against decedent. Subsequently a court of competent jurisdiction has by its judgment declared these judgments discharged. The Surrogate's Court would certainly be one of very limited jurisdiction if it had no right to observe and apply the facts as they actually exist in this particular.

A decree will be entered in this proceeding, directing that the funds of this estate remaining for distribution be paid by the administrator to the next of kin of said decedent in accordance with the statute, excluding the judgment creditors from participation in such distribution.

Decreed accordingly.